# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISON

| | | |
|---|---|---|
| VALEMAR D. BLADE, | ) | CASE NO. 1:24-CV-02234 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| | ) | |
| WARDEN ANGELA STUFF, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

## I.      Introduction

On December 7, 2024,[1] Petitioner Valemar D. Blade ("Blade" or "Petitioner"), a prisoner in state custody, filed a pro se petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF Doc. 1). On January 7, 2025, the District Judge referred the matter to me for issuance of a report and recommended decision pursuant to Local Rule 72.2. (Non-document entry of Jan. 7, 2025). On April 4, 2025, the Respondent, Warden Angela Stuff ("Respondent" or "Warden"), responded by filing a Motion to Dismiss Unexhausted Petition. (ECF Doc. 10). Blade filed a brief in opposition (ECF Doc. 11) on April 14, 2025. Respondent did not file a reply brief, and the time to do so has past. The matter is now fully ripe, and I proceed to considering Respondent's motion to dismiss.

---

[1] The prison mail rule controls the filing of a pro se federal habeas corpus petition; federal courts apply the filing date as the date on which the petitioner provides their documents to the prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266 (1988). Here, Blade asserts under penalty of perjury, that he submitted his petition on December 7, 2024 (ECF Doc. 1, p. 15) and addenda on December 12, 2024 (ECF Doc. 1-16, p. 4). I recognize the date listed on the primary petition document – December 7, 2024 – as the filing date. (ECF Doc. 1, p. 15).

1

## II.    Factual Background

The Ohio Court of Appeals, Eighth Appellate District, Cuyahoga County, set forth the facts of this case on direct appeal. These factual findings are presumed correct unless Blade rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Eighth District presented the facts as follows:

{¶ 2} In September 2020, Cleveland police officers were on patrol and pulled behind a vehicle that they initially believed did not have a rear license plate. As they got closer, they determined that the license plate was actually tucked into the rear windshield.

{¶ 3} The officers initiated a traffic stop, and the vehicle quickly turned into a driveway. The officers observed the driver, later identified as appellant, lean over to the passenger side, then exit the vehicle via the driver's side door and run behind some houses in the neighborhood.

{¶ 4} One officer chased after him, but eventually lost sight of him. Other officers came to the area to look for appellant and located him at a convenience store around the corner. Appellant was placed under arrest.

{¶ 5} The second officer at the traffic stop remained behind. He approached the vehicle and observed a firearm on the front passenger seat. After appellant was arrested, the officers notified dispatch that they had recovered a firearm and provided the serial number. The firearm had been stolen out of Brunswick.

{¶ 6} Appellant was charged in Cuyahoga C.P. No. CR-20-653162, with having weapons while under disability, a felony of the third degree, in violation of R.C. 2923.13(A)(2); improperly handling firearms in a motor vehicle, a felony of the fourth degree, in violation of R.C. 2923.16(B); receiving stolen property, a felony of the fourth degree, in violation of R.C. 2913.51(A); and obstructing official business, a misdemeanor of the second degree, in violation of R.C. 2921.31(A).

{¶ 7} In November 2021, appellant pulled into a driveway and hit a vehicle that was parked there. Sitting inside the vehicle was Cory Drake ("Drake"), a relative of appellant. Appellant emerged from his vehicle and confronted Drake. A physical altercation ensued until Drake's mother, Margaret Ridgell ("Ridgell"), came out of her house and broke it up. As appellant was leaving, he said that he was going to come back and kill them.

{¶ 8} Minutes later, appellant returned, parked up the street, and got out of his car. He pulled out a gun and began firing shots. Drake and Ridgell went inside to take cover and saw appellant get back in his car and leave. However, he returned several

minutes later and shot at the house again. Neighbors called 911 and identified appellant as the shooter.

{¶ 9} No person was struck by the shots, but Ridgell's kitten was killed during the melee.

{¶ 10} Police arrived on scene and collected shell casings. They spoke with Drake and Ridgell. A detective later followed up with Ridgell, who identified appellant as the shooter.

{¶ 11} Appellant was charged in Cuyahoga C.P. No. CR-22-667895, with two counts of improperly discharging into a habitation, felonies of the second degree, in violation of R.C. 2923.161(A)(1); two counts of felonious assault, felonies of the second degree, in violation of R.C. 2903.11(A)(2); discharge of a firearm on or near prohibited premises, a felony of the third degree, in violation of R.C. 2923.13(A)(2); having weapons while under disability, a felony of the third degree, in violation of R.C. 2923.13(A)(2); criminal damaging or endangering, a misdemeanor of the first degree, in violation of R.C. 2909.06(A)(1); two counts of aggravated menacing, misdemeanors of the first degree, in violation of R.C. 2903.21(A); and cruelty to animals, a felony of the fifth degree, in violation of R.C. 959.131(C). Six of the counts carried accompanying firearm specifications.

{¶ 12} In February 2022, appellant was in his residence where he lived with his girlfriend, Shaniya Nesbitt ("Nesbitt"), and their two children, a two-year-old and an eight-month-old. While Nesbitt was sleeping, appellant went through her phone and found messages between her and another man. He woke Nesbitt up and they began arguing. Appellant punched Nesbitt multiple times and smashed a lamp over her. Eventually things settled down and Nesbitt left, leaving appellant home with the children.

{¶ 13} Nesbitt went to the police department and reported the incident. The police then came back with her to the residence so she could get the children and leave for a while. When they arrived at the residence, the door was ajar and they heard crying inside. Appellant had left the children by themselves. Luckily, the children were unharmed.

{¶ 14} The officers helped Nesbitt pack the children up. Security guards at the apartment building located appellant in a stairwell. Officers went there and confronted appellant about what had happened.

{¶ 15} Appellant was charged in Cuyahoga C.P. No. CR-22-667896 with domestic violence, a felony of the fourth degree, in violation of R.C. 2919.25(A), and two

counts of endangering children, misdemeanors of the first degree, in violation of
R.C. 2919.22(A).

*State v. Blade*, No. 112084, 2023 WL 5621712, *1-2 (Ohio Ct. App. Aug. 31, 2023) ("*Blade I*").

## III.    State Court History

### A.    State Convictions

On March 3, 2022, in case number 22-CR-667895, Blade was indicted by the Cuyahoga

County Grand Jury on two counts of improperly discharging into habitation under O.R.C.

§ 2923.161(A)(1), with one-year and three-year firearm specifications under O.R.C.

§§ 2941.141(A) and 2941.145(A), respectively; two counts of felonious assault under O.R.C.

§ 2903.11(A)(2), again with one-year and three-year firearm specifications under O.R.C.

§§ 2941.141(A) and 2941.145(A); one count of discharge of a firearm on or near prohibited

premises under O.R.C. § 2923.162(A)(3), also with one-year and three-year firearm

specifications under O.R.C. §§ 2941.141(A) and 2941.145(A); one count of having weapons

while under a disability under O.R.C. § 2923.13(A)(2); one count of criminal damaging or

endangering under O.R.C. § 2909.06(A)(1); two counts of aggravated menacing under O.R.C. §

2903.21(A); and one count of cruelty to animals under O.R.C. § 0959.131(C), with a one-year

firearm specification under O.R.C. § 2941.141(A). (ECF Doc. 10-1, pp. 5-9).

On March 14, 2022, Blade's appointed counsel moved to withdraw. (*Id.* at pp. 12-13).

The same day, the state trial court granted the motion to withdraw and appointed new counsel.

(*Id.* at p. 14).

The state then moved to join Blade's three separate criminal cases for trial. (*Id.* at pp. 16-

19). In 20-CR-653162, Blade was charged with a violation of having a weapon while under a

disability under O.R.C. § 2923.13(A)(2); improper handling of firearms in a vehicle under

O.R.C. § 2923.16(B); receiving stolen property under O.R.C. § 2913.51(A); and obstructing

official business under O.R.C. § 2921.31(A). (*See id.* at p. 31). In CR-22-667896, Blade was charged with one count of domestic violence under O.R.C. § 2919.25 and two counts of endangering children under O.R.C. § 2919.22. (*See id.* at p. 29).

On September 14, 2022, the jury found Blade guilty of discharge of a firearm on or near prohibited premises, along with the firearms specifications (Count Five); having weapons while under disability (Count Six); and of aggravated menacing (Count Nine). (*Id.* at p. 22). At sentencing on October 20, 2022, the state trial court imposed a prison term of three years on the base charge and three years on the firearm specification on Count Five; thirty-six months on Count Six; and six months incarceration on Count Nine. (*Id.* at pp. 23-24). All counts were ordered to run concurrently to each other and consecutively to the other two cases joined prior to trial,[2] for an aggregate sentence of nine years. (*Id.*).

### B.    Direct Appeal

Blade, through appointed appellate counsel, filed a timely notice of appeal for all three cases on October 27, 2022. (ECF Doc. 10-1, pp. 39-42). In his brief on appeal filed on March 25, 2023, Blade raised the following two assignments of error:

1.    The Trial Court Erred in Granting the State's Motion to Join These Three Cases for Trial and then Proceeding to Trial on All 17 Counts.

2.    The Trial Court erred by admitting hearsay statements of three non-testifying witnesses under the Forfeiture by Wrongdoing exception in Evidence Rule 804(B)(6) and violated Appellant's Right to Confront the

---

[2] In CR-22-667896, Blade was sentenced to 18 months on the domestic violence charge and six months for each of the counts of endangering children; in 20-CR-653162, he was sentenced to 18 months on having weapons under disability, 18 months on improperly handling firearms in a motor vehicle, and 60 days in county jail for receiving stolen property. (*See* ECF Doc. 10-1, pp. 29-32).

Witnesses Against Him as guarantee by the 6th Amendment of the US Constitution and Section 10 of Article I of the Ohio Constitution.

(*Id.* at pp. 56-71). The state opposed on April 17, 2023. (*Id.* at pp. 73-97). Blade filed a reply brief on April 27, 2023. (*Id.* at pp. 98-106).

The Eighth District Court of Appeals overruled both assignments of error and affirmed the trial court's judgment on August 31, 2023. (*Id.* at pp. 108-25; *see also Blade I*, 2023 WL 5621712). Blade appealed to the Ohio Supreme Court on October 30, 2023. (ECF Doc. 10-1, pp. 173-74, 513). In his brief on appeal, Blade asserted the following three propositions of law:

PROPOSITION OF LAW NO. I:
The Eighth District Court of Appeals erred in denying appellant's assignment of error involving the trial court error granting the state's motion to join petitioner's three cases for trial and then proceeding to trial on all 17 counts.

PROPOSITION OF LAW NO. II:
The Eighth District Court of Appeals erred in denying appellant's assignment of error involving the trial court error admitting hearsay statements of three non-testifying witnesses under the forfeiture by wrongdoing exception in evid.r. 804(8)(6) and violated appellant's right to confront the witnesses against him as guaranteed by the 6th Amendment of the United States Constitution and Section 10 of the Ohio Constitution.

PROPOSITION OF LAW NO. III:
The Eighth District Court of Appeals erred and abused its discretion by denying appellant's application for reconsideration.

(*Id.* at p. 176). On December 26, 2023, the Ohio Supreme Court declined to exercise jurisdiction.

(*Id.* at p. 513; *see also State v. Blade* ("*Blade II*"), 223 N.E.3d 1257 (Ohio 2023) (table)).

**C.      Post-Conviction Filings**

On September 11, 2023, Blade, through counsel, filed an application for reconsideration, arguing:

1.      The Court's recitation of facts is an obvious error. The purported facts that the Court recites in Paragraphs 7, 8, 9, 12, and 13, are **not** contained anywhere in the record, and they merely restate the unfounded "facts"

contained in the state's brief, and which were challenged by Appellant in
his Reply Brief.

2.     In utilizing App. R. 12(A)(1)(b) as the basis of its decision, the Appellate
       opinion limits its consideration to only one of three reference points upon
       which to base its decision, and ignoring the other two references creates a
       miscarriage of justice which can be rectified without further Appellate
       proceedings.

3.     The Constitutional rights specifically named in the 6th Amendment to the
       US Constitution outweigh any purpose of Ohio App. Rules 16(A)3 or
       12(A)(1)(b) as applied in this case. Appellate Counsel's inartful formatting
       of the primary issue on appeal, an issue which was obvious to all parties and
       the Courts ab initio, should not result in this Court failing to even consider
       the merits of his 6th Amendment claims.

(ECF Doc. 10-1, pp. 128, 143). On September 18, 2023, the State opposed. (*Id.* at pp. 156-63).

Blade filed a reply brief on September 24, 2023. (*Id.* at pp. 164-69). The Eighth District Court of

Appeals denied the motion for reconsideration as moot on September 27, 2023. (*Id.* at pp. 171-

72). Blade appealed the motion for reconsideration to the Ohio Supreme Court, along with his

direct appeal, on October 30, 2023. (*Id.* at pp. 173-211). On December 26, 2023, the Ohio

Supreme Court declined to exercise jurisdiction. (*Id.* at pp. 212, 513; *see also Blade II*, 223

N.E.3d 1257).

On November 28, 2023, Blade, pro se, filed an application for reopening under Ohio

Appellate Rule 26(B), claiming the following assignments of error:

PROPOSED ASSIGNMENT OF ERROR NO. I:
Appellant's trial counsel provided ineffective assistance by virtue of counsel's
failure to file motion to dismiss case for violation of appellant's constitutional and
statutory right to a fast and speedy trial.

ASSIGNMENT OF ERROR NO. II:
The trial court abused its discretion when it permitted the prosecution to admit prior
conviction journal entries without a stipulation by the defense and without
complying with R.C. 2945.75(8).

ASSIGNMENT OF ERROR NO. III:
Where appellate counsel fails to specifically assign errors for review as App.R. 16(a)(3) requires, resulting in the failure of the court's review of the claims, counsel's performance falls below an objective standard of reasonableness-prejudicing appellant to full and fair review.

ASSIGNMENT OF ERROR NO. IV:
Where the state presented insufficient evidence to show that witnesses were unavailable appellant's right of confrontation is violated.

ASSIGNMENT OF ERROR NO. V:
The trial court abused its discretion by permitting the state to introduce out-of-court statements under the forfeiture-by-wrongdoing exception of Evid.R. 804(b)(6), in violation of appellant's right of confrontation.

(ECF Doc. 10-1, pp. 213-29). The state opposed on December 8, 2023. (*Id.* at pp. 230-35). Blade filed a reply brief on January 4, 2024, as well as a motion to proceed to judgment on May 10, 2024 and a motion to take judicial notice on May 21, 2024. (*Id.* at pp. 237-54). The Eighth District Court of Appeals denied all motions on July 29, 2024. (*Id.* at pp. 255-75). Blade subsequently filed a notice of appeal, pro se, to the Supreme Court of Ohio on September 11, 2024, raising four propositions of law:

PROPOSITION OF LAW I:
Does an appel[l]ant receive ineffective assistance of appellate counsel when counsel failed to raise[] a prima facie case for dismissal based on speedy trial violation under the Sixth and Fourteenth Amendment[s] of the United States Constitution?

PROPOSITION OF LAW II:
Does an appellant receive ineffective assistance of appellate counsel when counsel fail[ed] to raise when trial court permitted out-of-court statements in violation of [the] confrontation clause of the Sixth amendment and Fourteenth Amendments of the United States Constitution?

PROPOSITION OF LAW III:
Does appellant receive ineffective assistance of appellant counsel where counsel fails to comply with App.R. 16(a)(3) resulting in prejudice against appellant's right

to appellate review of his conviction under the Fifth, Sixth, and Fourteenth Amendment[s] of the United States Constitution?

PROPOSTITION OF LAW VI [*sic*]:
Is an appellant denied due process of law when an appellate court refuses to address each assignment of error in a motion to reopen his direct appeal under the Fifth and Fourteenth amendment[s] of the United States Constitution?

(*Id.* at pp. 276-94).

The Ohio Supreme Court declined jurisdiction on October 29, 2024. (*Id.* at p. 313; *see also State v. Blade* ("*Blade III*"), 244 N.E.3d 1170 (Ohio 2024) (table)).

Blade also filed petition for post-conviction relief under Ohio Civil Rule 59 on December 30, 2024. (ECF Doc. 10-1, pp. 473-502). The state opposed on February 21, 2025. (*Id.* at pp. 400-23). Blade filed a state court traverse on March 14, 2025. (*Id.* at pp. 424-37).

Blade also filed various pro se postconviction motions, including a motion for jail-time credit on July 18, 2024, (*id.*, pp. 314-19); a petition to vacate or set aside judgement of conviction or sentence on December 9, 2024, (*id.* at pp. 320-27); a motion for appointment of counsel in his postconviction motions, (*id.* at pp. 328-92); and a motion for expert assistance in his postconviction case (*id.* at pp. 393-96). The state filed a brief in response to the motions for appointment of counsel and for expert assistance. (*Id.* at pp. 397-99). Blade also filed a motion for new trial with the Eighth District Court of Appeals, which was denied on December 17, 2024, with instructions that motions for new trial are properly filed in trial court. (*Id.* at pp. 472, 510).

As of the time of this writing, Blade's state postconviction appeal was denied by the trial court on June 11, 2025. [3] *See* Cuyahoga County Clerk of Courts, Criminal Case Search by Name, Valemar Blade, https://cpdocket.cp.cuyahogacounty.gov/CaseInfo ByName.aspx (last accessed July 18, 2025). Blade has not filed a notice of appeal. *Id.*

Attached to Blade's Traverse is a Writ of Mandamus filed in the Supreme Court of Ohio, dated April 11, 2025. (ECF Doc. 11-7). That case is captioned as against Judge Corrigan and references  Blade's three criminal cases: CR-20-653-162-A, CR-22-667-895-A, and CR-22-667-896-A. (*Id.* at p. 1). The brief in support alleges bias and conspiracy committed by the trial court judge, the prosecutor, and his counsel, as well as constitutional errors affecting the validity of his trial. (*See generally* ECF Doc. 11-7). He further requests the Ohio Supreme Court compel Judge Corrigan to proceed to judgment in his state postconviction petition. (*Id.* at p. 12). The Supreme Court of Ohio docket indicates the mandamus action was filed on May 28, 2025. *See* Supreme Court of Ohio

---

[3] When determining a motion to dismiss, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne County Dep't of Human Services*, 901 F.3d 656, 694 (6th Cir. 2018). Here, Blade refers to his postconviction motions in his Petition (*see* ECF Doc. 1 and attachments), and the Warden provides state court docket sheets for all of Blade's state court cases as of the date of that filing. (ECF Doc. 10-1, pp. 503-14). Moreover, state court exhaustion is central to the determination of Blade's Petition. *See Cullen v. Pinholster*, 563 U.S. 170, 181, quoting 28 U.S.C. §§ 2254(a), (b), (c). Therefore, I determine it is proper to reference the state court dockets to determine the updated status of his cases without converting to summary judgment. *See Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 454-55 (N.D. Ohio 2012) (a court may take judicial notice of another court's docket where the plaintiff referred to or attached the public record to the complaint).

Case Information, *State ex rel. Valemar D. Blade v. Judge Peter J. Corrigan*, Case No. 2025-0725 (Ohio 2025), https://www.supremecourt.ohio.gov/Clerk/ecms/#/ caseinfo/2025/0725 (last accessed July 31, 2025). The state filed a motion to dismiss on June 12, 2025, and Blade filed a response on June 30, 2025. (*Id.*).

## IV.   Federal Habeas Corpus Petition

In his Petition, Blade asserts the following Grounds for Relief:[4]

**GROUND ONE:**[5] (Bias) Common Pleas Court, Judge, Peter J. Corrigan (Bias with Prejudice).

**Supporting Facts:** This Judge, Peter J. Corrigan, explicitly demonstrated his personal discontent; his personal acrimonies; his personal opinions of disregard for this Defendant, and/or his trial; his personal disregard for whether this Defendant is innocent; threats of longer prison time sentencing; (intimidation toward Defendant's life and liberty) all before trial started.

**GROUND TWO:**[6] (Chain-Conspiracy) committed by the Judge, Common Pleas Court.

**Supporting Facts:** Fifth – Sixth – Fourteenth Amendments Violated; with further violations of the United States Constitution and Universal Declaration of Human Rights, before during and after trial; and at sentencing. Malice and wanton-ill-will was demonstrated by this Judge with reckless intentions. Manifest Constitutional errors did occur by the direction of this Presiding Judge, Peter J. Corrigan, inter alia.

**GROUND THREE:**[7] Legal Malpractice of a Common Pleas Court Judge, Peter J. Corrigan:

**Supporting Facts:** 1. Case No. CR-22-667-895-A, was held within a roguish Common Pleas Court, under a rogue Judge of Cuyahoga County, Ohio. 2. He promoted and allowed his Prosecutor to commit, "malfease and misfeasance"

---

[4] Blade's Grounds for Relief are lengthy and, at times, difficult to decipher. (*See* ECF Docs. 1, 1-1 through 1-16, spanning 84 pages). They also contain certain marks which appear to be made for emphasis. (*See id.*). To the best of my abilities, I have summarized the contents and cleaned up the marks, while staying true to the assertions contained in Blade's Petition.

[5] Blade asserts he exhausted his state remedies in Ground One, (ECF Doc. 1, p. 5), but he notes on the next page that the state post-conviction petition related to Ground One is still pending (*id.* at p. 6).

[6] Blade states that Ground Two is pending in state court. (ECF Doc. 1, pp. 7-8).

[7] Blade states that Ground Three is pending in state court. (ECF Doc. 1, p. 9).

manifestation within a Grand Jury trial. 3. He promoted and allowed his prosecutor to circumvent, this Defendant's United States Constitutional and Amendment rights, "inter-alia".

**GROUND FOUR:[8]** Legal Malpractice of and by Prosecutor, of Criminal Grand-Jury Trial:

**Supporting Facts:** 1. This prosecution tampered with Records; 2. Interfered with Civil Rights: 2921.45(A); (B); 3. Committed Conspiracy with abetting Chain-Conspiracy; 4. Committed falsification of Official Police Reports, to distort its true finds, facts, and conclusions; 5. Committed actual, common, particular and transferred malice; 6. Committed Fraud; 7. Committed conflict of law and/or interest, "inter-alia;"; 8. Unconstitutional acts and/or actions. (ECF Doc. 1, pp. 5-10)

**GROUND FIVE:[9]** Unjustifiable, unjust "judicial retaliation" by Judge Peter J. Corrigan.

**Supporting Facts:** The Common Pleas Court Judge Peter J. Corrigan, of Cuyahoga County Ohio, Cleveland, committed the following: Retaliation with cognitive acts and/or actions, (using language) and threatening the Defendant-Petitioner, Valemar D. Blade, with retroactive and retroactive law, wrongfully and abusively; herewithin, therewithin, these current case numbers: (A) CR-22-667-895-A* (B) CR-22-667-896-A (3) CR-20-653-162-A. And in this Order of effective-ness, and by the combining of specific case numbers, CR-22-667-895-A, of which was irrelevant of which lack the manifest weight of evidence; and of which was insufficient to support any convictions. (but yet needed in order for this Judge to carry out a premeditated-additional lengthy sentence.) . . . this Judge grossly failed to call and established mistrial pursuant to the fact that "three alleged victims" and there, "two alleged witnesses intentionally failed to comply with their court ordered subpoena's . . . these alleged-victims "omission," and there two, alleged witnesses "omission"; with this prosecution's failure-of-proof defense clearly obvious, and failure-of-performance clearly obvious, to wit Fed. R. Civ. P. (12)(b)-(6) also violated; this Judge still failed to call a mistrial. . . . did not represent justice, and the United States Constitution and Amendments, and the Universal Declaration of Human Rights were not upheld, under him as the Presiding Judge, over this Defendant, Valemar D. Blade. Thereby this Judge's own acts and or actions of bias

---

[8] Blade states that Ground Four is pending in state court, which was filed in November 2024. (ECF Doc. 1, pp. 11-12).

[9] Grounds Five through Twelve were submitted as separate attachments and were not submitted on the standard habeas corpus petition form. Blade does not specifically disclose whether these Grounds were exhausted or are pending in state court. (*See* ECF Docs. 1-1 through 1-23). However, Grounds Nine, Ten, Eleven, and Twelve refer to the attached postconviction petition documents, which were mailed on November 28, 2024, and thus were pending in state court when he filed his petition. (*Compare id. with* ECF Doc. 1-17, p. 7).

– prejudice against Valemar D. Blade did he commit miscarriage of justice. (ECF Doc. 1-1, pp. 1-6)

**GROUND SIX:** Structural error, combined with procedural, plain an substantial error, of the Common Pleas Court Trial.

**Supporting Facts:** Structural Error, and/or "Per-Se Prejudicial," as defined; "A defect in a trial mechanism or framework that, by deprivation of basic constitutional protections, taints the trial process, making it unreliable and rendering any punishment fundamentally unfair." "A mistake in complying with the rules or steps in the legal process." "An error that is so obvious and prejudicial that an appellate court should address it despite the parties' failure to raise a proper objection at Trial." "An error that affects a party's substantive rights or the outcome of the case." All of these errors were fore-told by the fore-caster as he proceeded to fore-cast his fore-going fore-bidden structural, procedural, plain and substantial errors. Herein, therein be the official government state of Ohio judicial-affiliates and participants of whom witnessed and/or read and/or were told and/or were bribed and barter-ed with directly and/or indirectly. And more-over those participants of whom sought to withdrawal and/or immediately – withdraw from the involvement of illegal acts and/or actions that would wrongfully-convict this Defendant, Valemar D. Blade. Nevertheless, those participants grossly failed to report the illegal acts and/or actions of this Cuyahoga County, Common Pleas Court Against this Defendant. . . . Hence, this Defendant was wrongfully convicted as a result of their cowardice. (ECF Doc. 1-9, pp. 1-2)

**GROUND SEVEN:** Ineffective Assistance of Counsel, combined with acts and/or actions of bias, prejudice, bribery and bartering, (inter alia).

**Supporting Facts:** The court appointed criminal defense attorney, Scott W. Ramsey, wasted no time manipulating and exploiting this Defendant, Valemar D. Blade, and his court cases. . . . Attorney Scott W. Ramsey, was informed by this Defendant, Valemar D. Blade, that the first court appointed attorney, Charles M. Morgan, had violated his right to a speedy trial, pursuant to Case No. CR-20-653-162-A. And that attorney, Morgan had continued to coerce him into "not testifying" on his own behalf within a criminal trial, and that he still wanted to testify on his own behalf pursuant to these cases [CR-20-653-162-A; CR-22-667-895-A; CR-2-667-896-A]; and that he wanted a speedy trial for each case individually. This Defendant has informed attorney, Scott. W. Ramsey that he had and wanted his witnesses and alibis to be subpoenaed. . . . The acts and/or actions and lack thereof of attorney Scott W. Ramsey's legal defense and this legal obligation supersede illegal wrongdoing and dereliction of duty to an indigent Defendant such as Valemar D. Blade. . . . (ECF Doc. 1-12, pp. 1-8).

**GROUND EIGHT:** Deprivation of Rights under Color of Law, pursuant to Title 18 U.S.C. Section 242.

13

**Supporting Facts:** Thereby, "the refusal of Right to Counsel," by three individually selected appeals court appointed attorneys. . . . Not one of these appeals attorneys wanted to be "That Attorney" (to bring down a Judge and his chain-of-conspirators) of and within the Cuyahoga County Judicial Court System. Sadly for this Defendant-Appellant, Valemar D. Blade, these Appeals Attorneys elected to "Sacrifice" this young Black Man. . . . Shall there be cause and probable cause theretofore the Federal Bureau of Criminal Investigation involvement pursuant to corrupt activity known as racketeering activity under the Organized Crime Control Act of 1970; 84 Stat. 941, 18 U.S.C. 1961(1)(B), (1)(D) and (1)(E) as amended. (ECF Doc. 1-13, pp. 1-3).

**GROUND NINE:** Wrongful Indictments

See Grounds and Exhibits and a copy of attached post-conviction petition documents. Theretofore Support of Ground Nine, pursuant to cases CR-22-667-895-A and CR-22-667-896-A. (ECF Doc. 1-14).

**GROUND TEN:** Wrongful Sentencing

See Grounds and Exhibits and a copy of attached post-conviction petition documents and Civ. R. (59), pursuant to cases CR-22-667-895-A and CR-22-667-896-A. (*Id.*).

**GROUND ELEVEN:** Wrongful-Entrapment by Alleged Victims and Police

See Grounds and Exhibits and a copy of attached post-conviction petition documents and Civ. R. (59), pursuant to cases CR-22-667-895-A and CR-22-667-896-A. (*Id.*).

**GROUND TWELVE:** Violations of civil, state, and federal laws and statutes; committed by the Common Pleas Court and its state prosecutors.

See Grounds and Exhibits and a copy of attached post-conviction petition documents and Civ. R. (59), pursuant to cases CR-22-667-895-A and CR-22-667-896-A and in part Case No. CR-20-653-162-A. (*Id.*).

V.    **Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104-132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), applies to Blade's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

This is so because "[s]tate courts are adequate forums for the vindication of federal rights" and AEDPA thus acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). As a result, AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181, quoting 28 U.S.C. §§ 2254(a), (b), (c). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application shall not be granted . . . unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181.

First, clearly established federal law for purposes of AEDPA review includes "the holdings, as opposed to dicta, of [U.S. Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to U.S. Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the

state court decides a case differently than the Court despite both cases having materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). Even so, a state court does not act contrary to clearly established federal law where U.S. Supreme Court precedent is ambiguous or otherwise unavailable. *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is an unreasonable application of Supreme Court precedent where the state court's adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; see also *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). Under § 2254(d)(2), a state court's factual determination will stand unless it is objectively unreasonable in light of the evidence presented in state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 365.

Next, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). And, as the U.S. Supreme Court has repeated, "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Federal courts must also defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982).

In all, federal habeas corpus relief is a "guard against extreme malfunctions in the state criminal justice systems," and is different in kind from the relief available in direct appeal.

16

*Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (internal quotation omitted). Thus, to obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) ("When the state court has not assessed the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

## I.      Procedural Barriers to Federal Habeas Corpus Review

Before coming to federal court, a state habeas petitioner must overcome certain procedural barriers, including exhaustion of state remedies and procedural default. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). A federal court sitting in habeas review may review claims that were evaluated on the merits by the state court. But claims that were not evaluated by a state court, either because they were never fully presented to the state court (*i.e.*, state court remedies were unexhausted) or because they were not properly presented to the state court (*i.e.*, they are procedurally defaulted) are unavailable for federal habeas corpus review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004), *aff'd sub nom. Bonnell v. Mitchell*, 212 F. App'x 517 (6th Cir. 2007).

### A.      Exhaustion

A petitioner must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). For a claim to have

been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). It is not enough for the claim raised in state court to be "somewhat similar" to the one raised in the habeas petition or implicate the same facts; the state court must have been called on to apply the legal principles of the claim now presented to the federal courts. *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

The petitioner also must have presented their "claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Williams*, 460 F.3d at 807 (quotation marks omitted). In this Circuit, this can be done in one of four ways:

(1)   reliance upon federal cases employing constitutional analysis;

(2)   reliance upon state cases employing federal constitutional analysis;

(3)   phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

(4)   alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (paragraph breaks added).

Failure to exhaust occurs where state court remedies are still "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). This failure to exhaust can also lead to a petitioner procedurally defaulting his claims. If the petitioner has not fully utilized his state remedies and has no legal mechanism to do so now, the claim he failed to present is procedurally defaulted, and this Court cannot act on the claim either. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).

**B.      Procedural Default**

The procedural default doctrine limits federal review if the petitioner has failed to follow the state's procedural requirements for presenting his or her claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, a federal habeas court will not consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and is adequate to support the judgement.'" *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quotation marks omitted).

This Circuit consults a four-part test to determine whether a petitioner has procedurally defaulted a claim. A petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Because the procedural-default bar to federal habeas review is harsh, courts have created safety-valves to permit review in limited circumstances. A petitioner can obtain review of procedurally defaulted claims if they show: (1) "cause," *i.e.*, that some external factor kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.*, that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the alleged constitutional violation hadn't occurred. *Coleman*, 501 U.S. at 750; *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012). A

petitioner can also obtain review of a procedurally defaulted claim if the procedurally defaulted claim is based on new evidence that the petitioner was factually innocent of the crime of conviction. *See Coleman*, 501 U.S. at 750 ("fundamental miscarriage of justice" exception to procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."). But "[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency."; *Bousley v. United States*, 523 U.S. 614, 623 (1998). To overcome procedural default, an actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Moreover, because Petitioner is appearing pro se, the allegations in his Petition must be construed in his favor, and his pleadings are held to a less stringent standard than those prepared by counsel. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, this Court may dismiss the Petition at any time or make any such disposition as law and justice require, if it determines the Petition fails to establish adequate grounds for relief. *See Lonchar v. Thomas*, 517 U.S. 314, 325 (1996); *see also* 28 U.S.C. § 2243. This can include cases where a petitioner fails to exhaust state court claims. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982) (dismissal may be necessary where a § 2254 petition contains both exhausted and unexhausted state court claims); *cf. Rhines v. Weber*, 544 U.S. 269, 279 (2005).

## VI.    Discussion

Respondent has filed a motion to dismiss, arguing that of Blade's 12 federal habeas grounds for relief, at least 6 are related to his postconviction petition that was pending in state court and are unexhausted. (ECF Doc. 10, pp. 11-12). Grounds One and Two, regarding bias and conspiracy by the state trial judge, were pending a state court decision in Blade's state

20

postconviction petition and were unexhausted.[10] (*Id.*). Respondent presents Grounds Nine, Ten, Eleven, and Twelve as impermissibly vague for lack of detail; however, Blade's reference to his state postconviction motion in these grounds leads Respondent to conclude they are likewise unexhausted. (*Id.* at p. 12). Finally, Respondent states that Grounds Three, Four, Five, and Six were not presented to the state courts and are also unexhausted. (*Id.*). Because all of Blade's grounds for relief are unexhausted, Respondent requests the Court dismiss his federal habeas petition in its entirety, so Blade may provide Ohio appellate courts with the opportunity to consider his constitutional arguments before the federal courts step in. (*Id.* at pp. 13-16).

Respondent makes additional requests, should the Court disagree with dismissal in the entirety. First, Respondent requests that if Blade is permitted to proceed on his current petition, that the Court order him to make his grounds more definite. (*Id.* at p. 12). Next, should the Court determine a stay and abeyance procedure be proper, Respondent requests that "any stay granted be conditioned on compliance with both of the following:

    (1)    petitioner pursuing his unexhausted state remedies within thirty (30) days of the date the Court grants the stay; and,

    (2)    petitioner filing a motion to reinstate (with proof of exhaustion attached to the motion) the case on this Court's active docket within thirty (30) days after exhausting his state remedies.

(*Id.* at pp. 16-17).

Blade's Traverse[11] states that he has not achieved resolution of his state post-conviction petition (despite it being in the state court's possession since December 1, 2024) and the state's

---

[10] The state court issued its decision denying Blade's postconviction petition on June 11, 2025. (*See* ECF Doc. 12-1, pp. 1-7). At the time of this writing, Blade has not filed a timely notice of appeal. Without deciding, it appears that the first two grounds of Blade's federal habeas petition may still be unexhausted and procedurally defaulted.

[11] Blade's Traverse first appears to take issue with Respondent's filing of her Return of Writ as a motion to dismiss; he argues the filing was fraudulent and done against this Court's initial order,

opposition is intended to quash his federal habeas petition so they may dismiss his state postconviction petition. (*Id.* at p. 7). He requests the Court view the motion to dismiss as moot, void, voidable, and/or in violation of a court order. (*Id.* at p. 11).

Next, Blade submits his Traverse and presents his habeas petition as "relief worthy." (*Id.* at p. 13). He argues the merits of his habeas petition, and requests that his state case be dismissed and/or vacated, and that he be released from imprisonment pursuant to the wrongful convictions and sentencing. (*Id.* at p. 14). He requests relief of an evidentiary hearing, exoneration, acquittal, and/or a certificate of appealability in his state case. (*Id.* at p. 24). He does not directly address the question of exhaustion, but does state that his post-conviction petition was untimely filed yet exhausted. (*Id.* at p. 23).

Based on the information contained in Blade's filings, Respondent's motion to dismiss, and the state court docket, it appears that Blade has not exhausted his state court remedies. Even though the state court has ruled on Blade's postconviction petition and he is past time to appeal, this federal habeas petition is still presented as a mixed petition. Attached to his Traverse is a mandamus action filed in the Ohio Supreme Court after the filing of his federal habeas petition relating to the criminal cases underlying his habeas corpus petition. (*See* ECF Doc. 11-7). That brief both asks the Ohio Supreme Court to intervene in his state postconviction action, as well as raises claims that may be related to some of the grounds for relief presented in this case. (*See id.*). Additionally, in a document filed after his Traverse, Blade provides the motion to dismiss in

---

and attacks the Assistant Attorney General's status as an officer of the court, alleging that her actions in filing the motion to dismiss demonstrate a conspiracy between her and the state court judge and prosecutor to "weaponize[e] this petitioner's post-conviction petition." (ECF Doc. 11, pp. 3-11). I give no credence to these allegations. My initial order, the Rules Governing Section 2254 Cases, and the Federal Rules of Civil Procedure all permit Respondent to file a motion to dismiss if she deems appropriate.

that case, which was filed on June 12, 2025. (*Id.* at p. 6). It would appear, therefore, that Blade has yet to exhaust at least some of his claims in state court before this Court may decide the merits of any of his grounds for relief.

AEDPA requires that state prisoners exhaust all claims in state court before those claims may be reviewed by district courts on habeas review. *See* 28 U.S.C. § 2254(b)(1). This entails giving state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

District Courts were previously required to dismiss federal habeas corpus petitions that contained both exhausted and unexhausted claims – mixed petitions. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). However, the Supreme Court clarified in *Rhines v. Weber* that, in certain circumstances, a district court presented with a mixed petition may stay the case and permit the petitioner to present his unexhausted claims to the state court before the federal court undertakes review of the petition. 544 U.S. 269 (2005). In doing so, the Supreme Court recognized that if employed too frequently, stay and abeyance of mixed federal habeas corpus petitions would undermine AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of federal proceedings. *Id.* at 277. Frequent use of stay and abeyance would also decrease a petitioner's incentive to exhaust all of his state claims before filing his federal petition. *Id.* As such, a stay and abeyance should be given only in limited circumstances.

The *Rhines* Court provided the following three-part analysis to determine when granting a stay is appropriate: (1) the district court must determine that there is good cause for the petitioner's failure to exhaust his claims in state court; (2) the unexhausted claims cannot be plainly meritless; and (3) there is no indication that the petitioner engaged in intentionally

dilatory litigation tactics. *Id.* at 277-78. "[I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Id.* at 278.

### a. Stay and Abeyance

Stay and abeyance appears inappropriate in this case. As *Rhines* cautions, availability of stay and abeyance may discourage a petitioner from seeking relief in state court which would contravene AEDPA's finality principles. In making this decision, I follow *Rhines'* three-part test. First, I do not find good cause for Blade's failure to exhaust his claims in state court, because the state court dockets demonstrate that he has attempted to bring his claims in state court, but still determined to file his federal habeas case midstream. He must complete his course in state courts before he can file here. Second, I cannot determine whether his claims are plainly meritless. As I note elsewhere in this Report and Recommendation, Blade's grounds for relief are not fully clear and the support for these claims is not developed. Blade therefore does not meet the second prong. Third, I cannot determine if Blade has intentionally delayed the litigation in his cases. Certainly, there has been extensive litigation in his cases, but it does appear that his cases continue to progress. I cannot determine ill intent on this issue. Nonetheless, based on this review, Blade's case does not appear to be the type to warrant a stay and abeyance.

### b. Withdrawal of Grounds

When a court determines that stay and abeyance is inappropriate, the court may allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.

However, it does not appear that withdrawal of grounds is appropriate, because it is not clear whether Blade has exhausted any of his claims. And as I discuss in further detail below, it does not appear that dismissal of the entire petition will unreasonably impair Blade's right to obtain federal relief. AEDPA has a one-year statute of limitations bar. *See* 28 U.S.C. § 2244(d)(1). But AEDPA also allows for statutory tolling under § 2244(d)(2) when it states: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2); *see also Holbrook v. Curtin*, 833 F.3d 612, 615 (6th Cir. 2016). Statutory tolling extends "until the application has achieved final resolution through the State's post-conviction procedures," *Carey v. Saffold*, 536 U.S. 214, 220 (2002), or "until the expiration of the period for further State court review, whether or not the petitioner actually seeks such review." *Holbrook*, 833 F.3d at 615, quoting *Whitcomb v. Smith*, 23 F. App'x 271, 273 (6th Cir. 2001). Thus, it would appear based on Blade's state postconviction filings that statutory tolling may apply.

It is not entirely clear, as the federal court looking in on active state court proceedings, what effect Blade's action in the Ohio Supreme Court will have on statutory tolling. I therefore take no position on whether statutory tolling applies at this time; it is for Blade to calculate the impact of the ongoing state proceedings on the statute of limitations for his federal habeas petition. Nonetheless, should statutory tolling apply to Blade's state court proceedings, he will be permitted to complete his state court review without impairing his ability to refile his federal habeas petition. Therefore, allowing Blade to delete his unexhausted claims and proceed only with those remaining does not appear to be the best course.

####    c.   Dismissal

*Rose v. Lundy* held that federal district courts may not adjudicate mixed petitions. 455

U.S. at 522. It required, as does AEDPA, that state courts must have the first opportunity to

decide a petitioner's claims before the federal court may review. *Rhines*, 544 U.S. at 273-74

(explaining *Rose v. Lundy*'s "total exhaustion" requirement in the context of AEDPA's statute of

limitations). But even if a mixed petition is dismissed, this does not mean that it is the end of the

road for the petitioner's claims. *See id.*; *see also Slack v. McDaniel*, 529 U.S. 473, 476 (2000).

The petitioner may return to federal court after they have satisfied the exhaustion requirement.

*Id.* "[A] petition filed after a mixed petition has been dismissed under *Rose v. Lundy* before the

district court adjudicated any claims is to be treated as any other first petition and is not a second

or successive petition. *Slack*, 529 U.S. at 476. A petitioner is therefore not limited to the claims

presented in his initial petition, but may file a new petition in accordance with any conditions the

federal court may attach to the dismissal. *Id.*

   Because many of Blade's claims remain unexhausted or are otherwise intertwined with

the mandamus action in the Ohio Supreme Court, dismissal of the entire petition appears to be

the best course. As it stands, Blade's case is not well-suited to stay and abeyance for this Court to

wait for Blade to complete his state court cases. And, if Blade were permitted to proceed with

this petition as filed, this Court would not be able to review his claims on the merits. Therefore,

it appears that dismissal of the entire petition so Blade may finish his state court cases is

appropriate. Once those cases are complete, and mindful of AEDPA's statute of limitations,

Blade may refile his federal habeas petition and receive review at that time.

   Although Blade may have his doubts about the level of justice he may receive in state

proceedings, AEDPA still requires state exhaustion before this Court may determine the merits of

his claims, and this Court must trust that state proceedings may yet correct Constitutional wrongs. I therefore recommend the District Court grant Respondent's motion to dismiss, and dismiss Blade's petition in its entirety, without prejudice to refile, so he may exhaust all claims in state court before returning to federal court.

## VII.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(A), this Court will grant a certificate of appealability ("COA") for an issue raised in a § 2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.* at 486.

Here, it is well-established that federal district courts may not adjudicate mixed petitions. *Rose*, 455 U.S. at 522. As discussed above, Blade has not exhausted his state court remedies and

27

has an active case pending decision by the Ohio Supreme Court. That case raises issues

implicating both his state postconviction as well as the grounds for relief raised here. A petitioner

must exhaust all claims and provide state courts the opportunity to correct Constitutional wrongs

before this Court may consider the grounds for relief in his federal habeas petition. *Rhines*, 544

U.S. at 273-74. Thus, if the District Court accepts my recommendations, Blade will not be able

to show that my conclusions in this Report and Recommendation are debatable. I therefore

recommend that no certificate of appealability issue in this case.

## VIII.  Recommendation

Blade has not exhausted his state court remedies. I therefore recommend the District

Court grant Respondent's Motion and dismiss Blade's petition without prejudice to refile. I

further recommend he not be granted a certificate of appealability.


Dated: July 31, 2025

REUBEN J. SHEPERD
UNITED STATES MAGISTRATE JUDGE



---

### **Objections, Review, and Appeal**


Within 14 days after being served with a copy of this report and recommendation, a party
may serve and file specific written objections to the proposed findings and recommendations of
the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28
U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo
by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entire report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, \*2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).